OPINION OF THE COURT
Martin Evans, J.
This is a motion to decertify an action as a class action, pursuant to CPLR 902, which permits the alteration or amendment of the order which granted certification, either on the motion of a party or on the court’s own motion.
The action was commenced in 1977. In July, 1978, an order was issued declaring its class action status. This order was, thereafter, affirmed on appeal. (66 AD2d 669.)
The complaint alleges that the defendant, a “subsidy” publisher, had, by means of false and fraudulent advertising in its brochures, induced thousands of persons to pay moneys to it so that their manuscripts could be published in book form.
It was alleged, in the complaint and on the motion for class certification, that the misrepresentations were all contained in the brochures and in the contract which each *1059 of the putative authors signed; and it was alleged that each person had relied upon these representations and had entered into a contract under which the author was to and did pay certain moneys for various services leading to the publication and distribution of their manuscripts.
Most, but not all, of the necessary discovery in the case has now been completed by the plaintiff and the case will probably be ready for trial within a few months.
Class certification was granted in an order of this court (Hellman, J.). In its decision, the court found that the representations that are claimed to have been false were contained in a standard form contract and brochure which was distributed to each proposed member of the class.
The court there stated that the class members are limited to “those who have received the Contract and Brochure and other similar written material.”
The court further stated: “This provides sufficient identification to sustain plaintiff’s rights to class representation. The numerosity requirement is met by plaintiff’s estimate of some 2,400 to 3,600 persons and may be involved. Individually, the claims of each of the author-plaintiffs would be small in amount, expensive for purposes of litigation, with a resultant burden on the courts by the institution of individual action. Under all of the circumstances, the authorization of a class action will provide a fairer and more efficient adjudication of the controversy between the parties within the meaning of CPLR 901.”
That the court has the power, at any time, to decertify a case as a class action is clear. The case may be decertified, the classes may be divided into subclasses (Friar v Vanguard Holding Corp., 78 AD2d 83) or the action may treat only particular issues as issues to be decided on a class basis.
Now that discovery of the defendant by the plaintiff, and of the plaintiff class representative by the defendants, has been completed, the defendants move for decertification of the case as a class action on four separate grounds.
First, they claim that the element of reliance, necessary to be proven in an action based on fraud, is different as to each author, and that the named plaintiff cannot speak for *1060 every other author, with respect to his or her reliance on particular representations. Second, they claim that the named plaintiff has, on his own behalf, unilaterally withdrawn certain of his damage claims and that he cannot therefore represent those persons who may have such claims. Third, they claim that the named plaintiff does not have the financial ability to carry on the litigation properly, and fourth, they claim that there is a constitutional bar to the maintenance of claims on behalf of nonresidents who are not subject to the jurisdiction of this court.
Only the first and fourth of these grounds merit more extended discussion. As to the second ground, that the plaintiff has withdrawn some of his personal damage claims, the complaint contains a damage claim for incidental and consequential damages sustained by the named plaintiff, and therefore gives each author, who is represented by plaintiff, the right to make such a claim. Plaintiff has withdrawn his personal claim for mental distress and suffering. However, that will not prevent the establishment of that element, or of the monetary damages sustained by each of the authors, at such time as they are called upon to prove those amounts.
The order granting class certification never contemplated that the proof of damages would come solely from the named plaintiff. The amounts that he paid for the publication of his manuscript were different from the amounts paid by the other authors, as has been shown by discovery. The published books of authors were sold and distributed in different quantities.
Some received no recompense; others did receive some. What other benefits each sought to or did gain from the publication of the manuscript is a highly individual matter, and will have to be proved, as to each such author, in the usual manner. Some, if entitled to rescission, may demand that; others may stand on the contract and claim damages. Therefore, the fact that the named plaintiff has withdrawn his own claim to certain of the damages does not preclude the others from their proof; nor does it prevent the named plaintiff from proceeding with the other elements of the case which are based on the “questions of law or fact common to the class” (CPLR 901, subd 2).
*1061 The third ground is based upon the claim by defendants that discovery proceedings have shown that the plaintiff is financially unable to proceed with this case in a proper manner. His annual income is shown to be some $13,176 plus interest on $30,000. Out of this, his payments for the support of others comes to $12,250. He has already spent some $2,000 on this litigation and has promised to bear an additional expense of $2,500. Some other class members have contributed to a fund that is now in excess of $4,500. According to deposition testimony, the attorney for plaintiff is paying for part of this lawsuit. The full details of that have not been presented to the court, and therefore the propriety of that is not presently before this court, although such conduct may be a violation of rule 603.18 of the Rules of the Appellate Division of this department (22 NYCRR). (See Stern v Carter, 97 Misc 2d 775, mod 82 AD2d 321.)
However, since the case is nearly ready for trial, and an affidavit of the plaintiff’s attorney indicates the other class members are prepared to contribute financially, if necessary, to defray further expenses of the lawsuit, there seems no reason to disqualify the plaintiff on that ground.
With regard to the first ground, defendants claim that the element of justifiable reliance is a necessary element in a case based on fraud, and that this is an issue not common to all the class members, but personal to each one.
It is undisputed that reliance is a necessary element to be established in a case based on fraud. The failure to show justified reliance upon an alleged misrepresentation is fatal to the cause of action, even if it were shown that the representation was untrue to the knowledge of the defendant; and even if it were shown that the defendant intended that the plaintiff rely upon it.
The adoption by the Legislature of CPLR article 9, which established the procedural right to maintain class action, as a convenient and less expensive method of securing justice to those who have been wronged, was not intended to, nor did it, change the necessary elements of any substantive cause of action, including causes of action based on fraud.
*1062 Therefore, it is clear that reliance is an element to be pleaded, and proved, in this as well as in all fraud cases.
Plaintiff, while conceding this, argues that the element of reliance may be presumed to have existed, and he relies on this presumption, in lieu of actual proof, to maintain this action on behalf of absent class members.
There are two groups of cases in which the element of reliance has been presumed, thereby rendering it unnecessary for a plaintiff to offer proof of this element.
The first, and oldest of such cases, involves security fraud claims arising under the Federal Securities Acts, particularly under section 10-b of the Securities and Exchange Act of 1934. (US Code, tit 15, § 78j, par [b].) Under this line of cases, generally known as “10-b (5)” cases, reliance on a material omission is presumed to have existed. (See Affiliated Ute Citizens v United States, 406 US 128,152,153, and cases cited therein.) While reliance need not be proved in that type of case, the requirement of a showing of reliance has not been removed in common-law fraud cases, even where the common-law fraud was claimed in a separate count under the doctrine of pendant jurisdiction, together with the violations of the Federal statutes. (Tober v Charnita, Inc., 58 FED 74.)
Reliance, even though a necessary element in a common-law fraud charge, has been presumed in some recent cases, arising under CPLR article 9. These, however, have been cases involving travel agents, and specific tours. (See Guadagno v Diamond Tours, 89 Misc 2d 697.) While the principle is, of course, not limited to travel, nor to tour groups, the rule that can be derived, based on a commonsense understanding of the economic activity involved, is that, where misrepresentations have been made regarding a specific activity, such as a tour, which is to take place within a short space of time and in a defined place, and as to which there is no reasonable likelihood that the participants had other motives than to gain the particular benefits of the vacation, under the circumstances described in the travel brochure, reliance may, in those cases, be presumed, for purposes of allowing the class action to proceed.
Whether reliance, in these cases, need not be further shown at trial, has not been definitely determined by any *1063 case decided to this date in the State. It would, however, appear unjust to deprive a party, even a defendant, of the opportunity to disprove reliance, even in a class action case where, for the purpose of pleading, reliance by others than the named plaintiff (i.e., by the class members) is presumed. Otherwise, there would be no logical purpose in even requiring that the named plaintiff plead and prove reliance. If reliance may be presumed for absent class members, may it not be presumed for the named plaintiff? This approach would do away with a basic element of a fraud action and would permit recovery even if there was no reliance on a misrepresentation.
However, it is clear that there may have been different motivation for the entrance of each participant into the economic activity, such as existed in the case of Strauss v Long Is. Sports (60 AD2d 501) where a purchaser of season tickets to games of the New York Nets instituted a class action.
In that case, the plaintiff claimed that the presence of one player, “Dr. J.”, was the basis of his purchase of tickets, and he alleged that all persons who purchased tickets similarly relied on the advertised presence of “Dr. J.”; and that all were deprived of “Dr. J.’s” presence at the games by the actions of the defendant, who “Sold” “Dr. J.” to another team.
The court, reversing the determination by Special Term, which had certified the case to be a class action, held that knowledge of and reliance upon the representation alleged, was a necessary element in a case of fraud or breach of warranty, and stated that it was obvious that different factors were at work, affecting the motivation of the purchasers, including business reasons for the purchase of the tickets, the geographical location of the team, quality of the team (the Nets had won the American Basketball Association Championship) and other reasons. Clearly, the court recognized that there might have been other and different reasons, which even the court could not, on that record, identify.
While recognizing that some cases might fall into a category in which a court could reasonably conclude that, by nature of the operative facts, that there might be a *1064 presumption of reliance, Strauss (supra) did not fall into that category.
At the time of the certification of this case as a class action, plaintiff argued that the representations relied upon by him (and presumably by the class) were set forth in two documents. Special Term, affirmed by the Appellate Division, stated that “Plaintiffs have a right to assert as a class that, were it not for the representation by Vantage that it was a ‘publisher’, authors would not have paid substantial publication fees, based on a program of future advertising.” It can hardly be said that such representation was of less significance than that relating to the purchase of travel charters, as in the Guadagno (supra) case.
Although it can easily be argued that of the thousands of authors who are members of the class, some had many other reasons for publication: either vanity, or, as members of the teaching profession, a requirement of publication for advancement (cf. Cornell Univ. v Dickerson, 100 Misc 2d 198); this court should not, absent an adequate showing, set aside or vacate a prior decision of this court which held that in this case there was a presumption of reliance, by all of the class members, on everything set forth in the documents.
Instructive in this regard is the deposition of the plaintiff. The plaintiff himself did not read the entire brochure. He read “that which I considered as quite pertinent. There was stuff in there that I did not read.” Whether he relied upon what he did read, or not, or formed his own judgments, where other persons might not have done so, is unclear. What he considered as pertinent, others may not have.
The court cannot now conclude that each member of the class read only the same material that was read by the plaintiff. Some may have read more; others less. Some, in fact, did not wish to join the class action since they were satisfied with their contractual relations with Vantage Press.
Since a claim cannot be based on what was not read by them, the plaintiff’s testimony as to his reliance clearly cannot be the sole basis for an action on behalf of the many others who are not in the same position as the plaintiff.
*1065 The letters set forth by plaintiff, from other customers of the defendant on this motion, indicate that there were different reasons for their dissatisfaction.
Under all of the circumstances of this case, however, that is no reason for class decertification. Plaintiffs will, in any event, be required to prove their individual damages; and at that same time they will be able to show, if it exists, their individual reliance of the representations of the defendant. CPLR 906 permits the court to allow the action to be maintained as a class action with respect to particular issues; and the remaining issues are such that they will be appropriate, unless something more be shown, for class action treatment. Such issues as the representations that were made, and whether they were true or false are among the major issues in the case. Much discovery has been taken and completed by the plaintiff on these issues, and their resolution which are common to all of the class members, need be tried only once. Whether plaintiffs will proceed, so far as the questions of individual damages, or individual reliance, are concerned, by personal appearance of the class members or by depositions, is not of present concern; but those courses of action are available to the plaintiff in the further prosecution of this case.
Of more serious concern is the question of jurisdiction over those class members who are not residents of New York. Cases and articles have discussed this question, but no New York appellate court has yet passed upon it. (See Reis v Club Med, 81 AD2d 793; Bloom v Cunard Line, 76 AD2d 237; Simon v Cunard Line, 75 AD2d 283; Tanzer v Turbodyne Corp., 68 AD2d 614; Gottlieb v March Shipping Passenger Servs., 67 AD2d 879; Platto and Snyder, Nationwide Class Actions In New York State Courts?, NYLJ, April 11, 1983, p 1, col 2; Dickerson, Class Actions Under Article 9 of the CPLR, NYLJ, March 18,1983, p 1, col 3; cf. Miner v Gillette Co., 87 Ill 2d 7; Chance v Superior Ct., 58 Cal 2d 275; Shutts v Phillips Petroleum Co., 222 Kan 527, cert den 434 US 1068; Schlosser v Allis-Chalmers Corp., 86 Wis 2d 226; cf. Katz v NVF Co., 119 Misc 2d 48.)
For this State to assume jurisdiction over nonresidents who have not expressed a willingness to be subject to this jurisdiction, and whose activities are such that the State, *1066 under due process and sovereignty principles, cannot affect them by its actions, would be improper, and unwarranted by law, no matter what the form of the action. (Rush v Savchuk, 444 US 320; World-Wide Volkswagen Corp. v Woodson, 444 US 286; Shaffer v Heitner, 433 US 186; International Shoe Co. v Washington, 326 US 310; Feldman v Bates Mfg. Co., 143 NJ Super 84; Klemow v Time, Inc., 466 Pa 189, cert den 429 US 828.) It is clear, therefore, that the action cannot be said to be “binding” on those class members who are nonresidents of this State. Plaintiff suggests that the clause in the contract at issue requires all actions against the defendant to be brought in New York, extends the jurisdiction of the State to those nonresidents. That clause, however, is merely a choice of forum clause, and does not serve to extend jurisdiction. It cannot be said that the defendant, if it chose to bring an action against any of the nonresident class members for their breach of the contract, could commence such an action in this State, by virtue of that clause, and obtain a proper jurisdictional predicate for the case.
A judgment, rendered by this court, finding any issues against the defendant would, of course, if those issues were to be relitigated by any class member in another forum, be deemed to have been resolved in the class member’s favor, under well-recognized doctrines of collateral estoppel.
On the other hand, a judgment rendered by this court, in favor of the defendant on any of the issues in this case, would not have preclusive effect, against any of the nonresident class members.
Since the class action has been developed in order to settle the rights and obligations of all possible parties to an action, and of all persons who are represented by the parties, it cannot be said that the class should consist of persons who will not be subject to, or bound by the judgment that may be rendered in this case. (See Simon v Cunard Line, 75 AD2d 283, supra.) In the event that defendant has (as it well may) claims against any of the contracting class members for nonpayment of the amounts due under their contract, it will be unable to enforce them in this action, by reason of its lack of jurisdiction over the nonresident persons, and it might find itself precluded by *1067 an affirmative judgment in favor of the named plaintiff who represents the class, even though it has had no opportunity to contest the particular issues between it and the nonresidents.
This, however, is not the end of the matter. The class members here are finite in numbers and identifiable. It may be that some of the nonresident class members will “opt in” and therefore will be bound by the judgment as a matter of law. It is also possible that nonresident class members who do not wish to become individually named parties to the case, will consent to be bound by the determination made, as to the issues in the case to be rendered, just as a resident of this State, even though a nonparty, would be bound by the judgment, as the result of the jurisdiction of this State over all of its residents. Those persons may continue to be class members.